Richardson, Ch. J.,
delivered tbeopinion of the court:
This case was first tried with that' of Charles Mitchell. Both wereargued as presenting the same question oflaw, whether a public officer could “ recover the difference between the salary established by law for the office which he held and the amount paid to him in accordance with the appropriations made by Congress.” Judgment was rendered in favor of each claimant March 19,1883. (18 C. Cls. R., 281.)
In the Mitchell Case an appeal to the Supreme Court was taken and allowed March 26, 1883, was duly entered in that court, and was there submitted on briefs March 30. The Supreme Court rendered its decision November 5 of the same year in favor of the defendants, reversing the judgment of the court below. (109 U. S. R., 146.)
In the present case an appeal was taken by the defendants in like manner June 14, 1883, but was not entered in the Supreme Court according to the rules. On the 12th of May, 1884, the claimant filed in this court a mandate of the Supreme Court addressed to the judges in the usual form, ip which, after reciting the case and the taking of an appeal, the following orders are set out:
“And whereas, in the present term of October, in the year of *437 ourLord one thousand eight hundred and eighty-three, the said cause came on to be heard before the Supreme Court,'and it appearing that the appellant has failed to have its appeal filed and docketed in conformity with the rules of this court: It is now here ordered and adjudged by this court that their appeal from the Court of Claims be, and the same is hereby, doclfeted and dismissed.
“ And it is further ordered that this cause’be, and the same is hereby, remanded to the said Court of Claims. May 5, 1884. - “ You, therefore, are hereby commanded that such proceedings be had in said cause as, according to right and justice and the laws of the United States, ought to be had, the said appeal notwithstanding.”
On the 13th of the same month of May the Assistant Attorney-General filed the following:
“ Motion for a new trial.
“ And now come the defendants, by their Attorney-General, and move this honorable court for a new trial in the above-entitled cause on the ground that wrong and injustice in the premises have been done the United States to the damage of the United States of the sum of $3,400, in this, that the above case was heard in this court at its last term at the same time with the case of Charles Mitchell v. The United States, No. 13371; that in both the cases the judgment of this court was for plaintiff, and that the cases were appealed to the Supreme Court, and that the questions of law involved m both cases were in effect the same; and that it was the understanding of the defendants that the appeal in the above case was to abide the decision in the said case of Charles Mitehell v. The United States;
“ That the said case of Mitehell v. The United States, on appeal as aforesaid, was decided by the Supreme Court at its present term adversely to the claimant, and the judgment of this court in said case vas reversed;
“ That relying upon the understanding that this case was to abide the.result in the said case of Mitchell v. The United States, no further action was taken by defendants and no transcript of record was filed in the Supreme. Court, and the claimant thereupon, atthe present term of said court, has caused the said case to be docketed and dismissed, as permitted by the rules of the said court; and the defendants aver that this case, if tried on appeal, must have been decided against the claimant upon the same principles as determined the court in the case of Mitchell v. The United States.
“And they further assert that upon a new trial of this case by this court it must be decided adversely to the claimant under the law as settled by the Supreme Court in the said case of Mitchell v. The United States; and the defendants aver *438 that because of the foregoing such wrong and injustice have been done the United States in the premises as to entitle them to a new trial in the above case under sectiou 1088 of the Revised Statutes.”
This motion was resisted by the claimant and was fully argued by the parties. On the 2d of June, 1884, the court allowed the motion and granted a new trial.
The case has been tried anew, against the objection of the claimant, as to both the facts and the law. In the present findings we have stated the facts somewhat more fully than before, and have omitted that part of one of the former findings which sets out that the claimant was “ one of the four Indian agents authorized by Revised Statutes, section 2052, to be appointed for the tribes in California.” That proposition was not in controversy at the former trial, and the argument proceeded upon the assumption that it was correct. As the case is now presented it may involve a question of law, and in place of it we have set out the claimant’s commission, which speaks for itself as to the character of his appointment.
It appears that the Mitchell Case was not decided by the Supreme Court upon the point argued and determined by, this court. In the opinion, by Mr. Justice Woods, it is said:: “ Whether a simple failure by Congress to appropriate any or a sufficient sum to pay the salary of an office fixed by previous law is of itself an expression of purpose by Congress to reduce the salary, we do not now decide. That is not this case. On the contrary, in this case Congress has in other ways expressed its purpose to reduce, for the time being, the salaries of the interpreters.”
The Supreme Court found language in the appropriation acts, not referred to by counsel on either side at the trial in this court, from which the conclusion was drawn “ that instead of establishing a salary for interpreters at a fixed amount, and cutting off all other emoluments and allowances, Congress intended to reduce the salaries and place a fund at the disposal of the Secretary of the Interior, from which, at his discretion, additional emoluments and allowances might be given to the interpreters.”
The present claimant was not an interpreter, but an Indian agent, and the language of the appropriation acts referred to by the Supreme Court upon which the decision in Mitchell’s Case *439 turned did not apply to Indian agents. No similar language is found in any of the appropriation acts in relation to the latter offices.
In the subsequent case of Lingston (118 U. S. R., 389) the Supreme Court expressly held, as we held on the point raised, argued, and decided in this court in Mitchell’s Case that—
“A statute which fixes the annual salary of a public officer at a designated sum, without limitation of time,"is not abrogated or suspended by subsequent enactments appropriating a less amount for his services for a particular year, but containing no words which, expressly or impliedly modify or repeal it.”
In the light of the opinions of the Supreme Court in these cases, we are to re-examine and decide this case upon the present findings of fact.
The Revised Statutes provide as follows :
“ Sec. 2052. The President is authorized to appoint from time to time, by and with the advice and consent of the Senate, the following Indian agents: Three for the tribes in Oregon. Fourteen for the tribes east of the Rocky Mountains and north of New Mexico and Texas. Seven for the tribes in New Mexico. Three for the tribes in the Territory of Washington. One for the tribes in Kansas. One for the Kickapoos. One for the Delawares. Two for the tribes in Utah. One for the Poncas. One for the Pawnees in Nebraska, each with an annual salary of fifteen hundred dollars.
“ Four for the tribes in California, at an annual salary of eighteen hundred dollars each.
“ Three for the tribes in Texas.
“ One for the Wichitas and neighboring tribes west of the Choctaws and Ohickasaws, at an annual salary of one thousand dollars.”
This section authorized the appointment of forty-two agents at specified salaries as fixed therein, and in section 2055. But Congress in every subsequent annual appropriation act has made provision for the pay of Indian agents without regard, apparently, to these sections either as to the number of agents or their salaries.
By the Aot of June 22, 1874 (18 Stat. L., 146), the appropriation for the year ending June 30, 1875, was for sixty-nine agents, of whom three, instead of four, were for “ tribes in California, namely, Hoopa Yalley, Round Yalley, and Tule River Agencies,” at $1,500 each instead of $1,800.
The Aet of March 3, 1875 (18 Stat. L., 420), made appropriation for the year ending June-30, 1876, for the pay of seventy *440 agents, including the same three by name, for the tribes in California at the same rate, $1,500, as for the next preceding year. Within the period covered by this act the claimant was appointed “ agent for the Indians at Tale Biver Agency, in California,” and was informed by the Commissioner of Indian Affairs, by letter, that the salary would be $ 1,500 a year.
The Act of August 15, 1876 (19 Stat. L., 176), appropriated for the year ending June 30, 1877, for the pay of sixty-eight agents, of whom three were for the same agencies by name and at the same rate of compensation ($1,500) as in the next preceding act.
The Act of March 3, 1877 (19 Stat. L., 271), made appropriation for the year ending June 30, 1878, for sixty-nine agents, of whom two, instead of four or three as before, were “ for the tribes in California, namely, Bound Yalley and Tule Biver Agencies,” at $1,500 salary, the same as appropriated for the next preceding years, instead of $1,800, as provided in the Be-vised Statutes.
The Act of May 27, 1878 (20 Stat. L., 63), appropriated for the year ending June 30,1879, for seventy-four agents, of whom in California one was for the Bound Yalley Agency, $1,500, ■one for the Hoopa Yalley Agency, $1,000, one for the TuleBiver Agency at $1,000, and one for the Mission Agency at $3,000. By the Act of June 14, 1878 (20 Stat. L., 115), so much- of the Act of May 27, 1878, as provided the sum of $3,000 for the salary of the agent at the Mission Agency in California was repealed, and the sum of $1,300 for said salary was inserted instead thereof.
The Act of February 17, 1879 (20 Stat. L., 295), appropriated for the year ending June 30, 1880, for seventy-one agents, including Bound Yalley Agency, $1,500; Hoopa Yalley Agency, $1,000; Tule Biver Agency, $1,000; Mission Agency, $1,300. Within the period covered by this act the claimant receivéd his second commission after having been notified by letter that the salary of the office was $1,000 per annum.
The Act of May 11, 1880 (21 Stat. L., 114), appropriated for the year ending June 30, 1881, for sixty-eight agents, of whom those in California were the same as in the next preceding act and at the same compensation.
The Act of March 3, 1881 (21 Stat. L., 485), appropriated for the year ending June 30,1882, for sixty-six agents, of whom *441 those in California were the same and at the same compensation as for the next preceding year.
The Act ofMwy 17,1882 (22 Stat. L., 68), appropriated for thó year ending June 30, 1883, for fifty-eight agents only, of whom those in California were the same and at the same rate as in the latest preceding years, which gave to the agency held by the claimant $1,000.
The claimant has been paid the full amount appropriated for the salary of his office by those several acts. He now seeks to recover the difference between the amount so received and that to which he would have been entitled if he were to be paid at the rate of $1,800 a year under the provision of Revised Statutes, section 2052, as he claims.
The intention of Congress must govern in the construction of these conflicting provisions. That intention seems clear. The course of legislation in these several appropriation acts shows, we think, beyond question that it was the settled purpose of Congress to regulate the Indian agency service according to the exigencies of each year without reference to the general provisions of the Revised Statutes. (Supp. Rev. Stat., 325, note.)
The latter provided for forty-two agents with specified salaries. On the very day of the approval of these statutes Congress passed the act making appropriations for the expenses of the Indian Department for the year ending June 30, 1875, in which sixty-nine agents were provided for, with salaries, in many cases, differing from those mentioned in the Revised Statutes. Three agents in California were appropriated for by name at $1,500 instead of four at $1,800 without designation, as authorized by Revised Statutes. The appropriation acts thereafter varied in the number of agents and their salaries.
The Revised Statutes authorized the President to appoint four agents for the tribes in California, without naming them, while the subsequent appropriation acts make provision m different years for two, three, or four, by specific designation, with compensation specified for each. The claimant was appointed to the Tule River Agency after the passage of the appropriation acts designating that agency and its salary for the current year. That agency was situated in California, but part of the time it was one of two, part of the time it was one of three, and part of the time one of four in that State, but always specified by name and with a salary different from that provided by the *442 Revised Statutes for tbe four agencies for tbe tribes in California. When tbe Mission Agency first appeared in these acts (for tbe year ending June 30,1879), the compensation for it was fixed at $3,000, but by a subsequent act, passed soon after for tbe same year, tbe compensation was changed to $1,300.
All these provisions show that Congress persistently determined each year to fix tbe compensation of Indian agents by annual appropriations.
We are of opinion that tbe claimant has received all be is entitled to, and his petition will be dismissed.